Case 4:22-cv-04243   Document 18   Filed on 03/04/24 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
March 04, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SABAHAT H.,[1] § § § *Plaintiff,* § § v. § § No. 4:22-cv-4243 KILOLO KIJAKAZI, § Acting Commissioner of Social § Security, § § *Defendant*. § | |

## MEMORANDUM AND ORDER

Plaintiff Sabahat H. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. Pl.'s Compl., ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("the Act").[2] Plaintiff filed a motion for summary judgment. Pl.'s MSJ, ECF No. 13. Commissioner filed a response, Def.'s Response, ECF No. 16, which the Court construes as a motion for summary judgment, *Samuels*

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] On February 27, 2023, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order Transferring, ECF No. 7.

1

*v. Kijakazi*, No. 3:22-CV-00198, 2023 WL 2774460, at *1 n.1 (S.D. Tex. Apr. 4, 2023) (quoting *Roe v. Colvin*, No. 2:13-cv-02265, 2014 WL 7239458, at *1 n. 1 (E.D. Cal. Dec. 17, 2014). Plaintiff filed a reply. Pl.'s Reply, ECF No. 17. Plaintiff seeks an order rendering benefits or remand for further consideration, arguing that "[t]he ALJ's RFC determination is unsupported by substantial evidence and is the product of legal error where he failed to properly evaluate the opinion evidence." ECF No. 14 at 2. Commissioner counters that the ALJ properly evaluated the medical source opinions. ECF No. 16. Based on the briefing, the record, and the applicable law, the Court finds that the ALJ properly evaluated the opinion evidence in making his RFC determination. Thus, Plaintiff's motion for summary judgment is denied.

I.  BACKGROUND

Plaintiff is 53 years old, R. 223, 235[3] and earned a college education. R. 210. Plaintiff worked as a travel agent and teacher's aide. R. 211–12. Plaintiff alleges a disability onset date of November 15, 2019. R. 16, 224. Plaintiff claims she suffers from physical impairments. R. 225, 236.

On March 20, 2020, Plaintiff filed her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. R. 16,

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 4.

425–69. Plaintiff based[4] her application on hypertension,[5] fibromyalgia of the right shoulder,[6] gastric and duodenal ulcers, rheumatoid arthritis,[7] and swollen lymph nodes of both shoulders. R. 225, 236. The Commissioner denied Plaintiff's claim initially, R. 223–34, and on reconsideration. R. 235–64.

Two hearings were held before an Administrative Law Judge ("ALJ"). An attorney represented Plaintiff at both hearings. R. 16, 198. Plaintiff and a vocational expert ("VE") testified at the hearings. R. 16, 200, 214. The ALJ issued a decision denying Plaintiff's request for benefits.[8] R. 19–25. The Appeals Council denied

---

[4] For Plaintiff's disability insurance benefits, the relevant time period is November 15, 2019—Plaintiff's alleged onset date—through December 31, 2024—Plaintiff's last insured date. R. 19. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin,* 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

[5] Hypertension is high blood pressure. *See* https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/symptoms-causes/syc-20373410 (last visited November 27, 2023).

[6] Fibromyalgia is a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues. *See* https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780 (last visited November 27, 2023).

[7] An autoimmune disorder, rheumatoid arthritis occurs when your immune system mistakenly attacks your own body's tissues. *See* https://www.mayoclinic.org/diseases-conditions/rheumatoid-arthritis/symptoms-causes/syc-20353648 (last visited November 27, 2023).

[8] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at step four. R. 25–26. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured. R. 19 (citing 20 C.F.R. § 404.1571 *et seq.*, § 416.971 *et seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments: cervical, thoracic, and lumbar degenerative disc disease, osteoarthritis of the bilateral knees and left ankle, rheumatoid arthritis, and fibromyalgia. R. 19–21 (citing 20 C.F.R. §§ 404.1520 (c), 416.920(c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 21 (referencing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and

Plaintiff's request for review, upholding the ALJ's decision to deny benefits. R. 1–6. Plaintiff appealed the Commissioner's ruling to this Court. ECF No. 1.

## II. STANDARD OF REVIEW OF COMMISSIONER'S DECISION.

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a

---

416.967(b), can lift and carry up to 20 pounds occasionally and 10 pounds frequently, sit up to 6 hours in an 8-hour day, push and pull as much as she can lift and carry, stand and walk to 4 hours in an 8-hour day, occasionally climb ramps and stairs, never climb ladders or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, engage in frequent bilateral reaching, handling, fingering, and feeling, and never be exposed to unprotected heights or moving mechanical parts. R. 21–25. At step four, the ALJ determined that through the date last insured, Plaintiff was able to perform her past relevant work as a travel agent. R. 25–26 (citing 20 C.F.R. §§ 404.1565, 416.965). Therefore, the ALJ concluded that Plaintiff was not disabled. R. 26.

preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of Commissioner, even if the evidence preponderates against Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for Commissioner's decision and involves more than a search for evidence supporting Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial

5

evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

### III. DISABILITY INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME UNDER THE ACT.

The Act permits the payment of insurance benefits to persons who have contributed to the program and who suffer a physical or mental disability. 42 U.S.C. § 423(a)(1)(D). These payments are referred to as disability insurance benefits. The Act also permits Supplemental Security Income ("SSI") payments to the aged, blind, and disabled to assure that their income does not fall below the poverty line. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.110. Although these programs are distinct, applicants must prove "disability" under both sections. *See* 42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382c(a)(3)(A) (SSI). Both sections define disability using virtually the same language. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (using "unable" rather than "inability"). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). "The suffering of some impairment does not establish disability; a claimant is disabled only if he is 'incapable of engaging in any substantial gainful activity.'" *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1987)). "The law and regulations governing the determination of disability are the same for both programs." *Roberts v. Colvin*, 946 F. Supp. 2d 646, 657 (S.D. Tex. 2013) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

## IV. THE SHIFTING BURDEN OF PROOF.

The Act places the burden of establishing disability on the claimant. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). To be entitled to disability insurance benefits, a claimant "must show that he was disabled on or before the last day of his insured status." *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981). SSI benefits are dependent on proof of disability and indigence, and a claimant can receive SSI payments once he applies to the program, no matter how long he has been disabled. *Torres v. Colvin*, No. 4:13-cv-2571, 2014 WL 4064002, at *6 (S.D. Tex. Aug. 15, 2014) (citing 42 U.S.C. §§ 1382a, c(a)(3), *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999), and 20 C.F.R. § 416.335).

Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to establish

that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## V. COMMISSIONER IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff raises one issue: that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly evaluate the medical opinions of Dr. David Rodriguez-Quintana and Dr. Adeeba Akhtar. ECF No. 14 at 10, 11. Plaintiff contends that although the ALJ summarized both opinions, he failed to explain why he discounted these opinions as minimally explained and unsupported by the treatment notes, and therefore erred by failing to comply with the requirements of 20 C.F.R. §§ 404.1520c(c), 416.920c(c). *Id.* at 13. Plaintiff asserts that contrary to the ALJ's terse assessment, both opinions were amply supported by and consistent with the medical record. *Id.* at 14–16. Commissioner responds that the ALJ properly found both opinions to be unpersuasive based on their minimal explanations, and lack of support from their treatment records and the medical record as a whole. ECF No. 16 at 5–7.

### A. The ALJ Must Analyze Each Medical Opinion's Supportability and Consistency.

Between the third and fourth steps of the sequential analysis, the ALJ must

8

decide the claimant's RFC, which is defined as "the most the claimant can still do despite his [or her] physical and mental limitations . . . based on all relevant evidence in the claimant's record." *Winston v. Berryhill*, 755 F. App'x 395, 399 (5th Cir. 2018) (citation omitted). The RFC determination is the "sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1999)). When making the RFC determination, the ALJ must consider all medical opinions contained in the record. 42 U.S.C. § 405(b)(1). The ALJ must "incorporate limitations into the RFC assessment that were most supported by the record." *Conner v. Saul*, No. 4:18-CV-657, 2020 WL4734995, at *8 (S.D. Tex. Aug 15, 2020) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). As an administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record, including the credibility of medical experts and the weight to be accorded their opinions. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

For claims filed on or after March 27, 2017, like the instant case, the Social Security Administration requires ALJs to explain how they evaluate a medical opinion's persuasiveness. *See Johnson v. Kijakazi*, No. 4:20-CV-04271, 2022 WL 3588042, at *3 (S.D. Tex. Aug. 22, 2022) (citing *Shugart v. Kijakazi*, 2022 WL 912777, at *3 (S.D. Tex. Mar. 29, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c)).

"In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) 'other factors that tend to support or contradict' the opinion." *Id.* (citing *Shugart*, 2022 WL 912777, at *3 (citing and quoting 20 C.F.R. § 404.1520c(c))). "Among those factors, the most important are supportability and consistency." *Id.* (citing *Shugart*, 2022 WL 912777, at *3 (citing § 404.1520(c)(b)(2))).

"The supportability and consistency factors involve different analyses and require the ALJ to explain his reasoning for his persuasiveness finding with respect to each factor." *Rai R. v. Kijakazi*, No. 4:21-CV-2270, 2022 WL 4450487, at *4 (S.D. Tex. Sept. 23, 2022) (citing *Kilby v. Kijakazi*, No. 4:20-cv-03035, 2022 WL 1797043, at *3 (S.D. Tex. Mar. 15, 2022)). "With respect to 'supportability,' 'the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations *presented by the medical source* increase,' and consistency is 'an all-encompassing inquiry focused on how well a medical source is supported, or not supported, *by the entire record*.'" *Id.* (emphasis in original) (quoting *Luckett v. Kijakazi*, No. 4:20-CV-04002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 404.920c(c)(1)) (quoting *Vellone v. Saul*, 1:20-cv-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021))).

Importantly, "[t]here is simply no requirement under the new rule that the ALJ

address each specific opinion when a single physician provides multiple opinions." *Samuels v. Kijakazi*, No. 3:22-CV-00198, 2023 WL 2774460, at *5 (S.D. Tex. Apr. 4, 2023) (quoting *Teixeira v. Comm'r, SSA*, No. 4:21-cv-00003, 2022 WL 3130859, at *8 (E.D. Tex. July 12, 2022)). "What matters is whether 'the ALJ addressed both the supportability and consistency of the opinion *at the source-level*.'" *Id.* (quoting *Teixeira*, 2022 WL 3130859, at *8). Importantly, "'the ALJ's assessment and articulation of consistency and supportability must be read in full context of the RFC findings,' not in isolation." *Id.* (quoting *Teixiera*, 2022 WL 3130859, at *9 n.15); *see also Gonzales v. Kijakazi*, No. 4:20-CV-00270, 2021 WL 3777181, at *3 (S.D. Tex. Aug. 3, 2021) ("The ALJ's express evaluation of Dr. Masciangelo's opinion is quite brief and gives only a cursory explanation of the medical evidence the ALJ found was unsupportive of or inconsistent with the opinion. However, this cursory explanation immediately follows a more detailed discussion of the medical evidence in the context of assessing Gonzales' statements about the limiting effects of his symptoms.").

### B. Dr. Rodriguez-Quintana and Dr. Akhtar Provided Medical Opinions.

Both doctors filled out a form which largely consisted of check-the-box answers to questions related to Plaintiff's physical conditions.[9] Dr. Rodriguez-

---

[9] R. 772–75 (Dr. Rodriguez-Quintana's Medical Opinion, dated 9/7/2021); R. 1125–34 (Dr. Akhtar's Medical Opinion, dated 4/30/2021).

Quintana noted in his form that he only saw Plaintiff once for a "bilateral knee cortisone injection on [February 3, 2021]."[10] Dr. Rodriguez-Quintana opined that Plaintiff required a cane "as needed," but also opined that Plaintiff could ambulate without the use of the device with "no restrictions."[11] Dr. Rodriguez-Quintana did not offer any additional explanation for this opinion. Notably, Dr. Rodriguez-Quintana opined that Plaintiff had no other restrictions with work.[12]

Dr. Akhtar stated that he specializes in "family practice and geriatric," and began treating Plaintiff on October 28, 2021 for her rheumatoid arthritis, spinal stenosis, muscular dystrophy, GERD, fibromyalgia, cervical herniation, among various other diagnoses.[13] Without providing any explanation or examples, Dr. Akhtar checked numerous boxes for various mental limitations, including Plaintiff's abilities to interact with others, concentrate, adapt, and understand.[14] Without any explanation, he checked the box for "<30 min." for how long Plaintiff

---

[10] R. 772 (Dr. Rodriguez-Quintana's Medical Opinion).

[11] R. 774 (Dr. Rodriguez-Quintana's Medical Opinion, stating patient required "cane as needed," and patient can ambulate "without the use of the device" with "no restrictions.").

[12] R. 772–75 ( Dr. Rodriguez-Quintana's Medical Opinion, stating Plaintiff would be off-task 0% of the workday, would be absent 0 days each month as a result of medical impairments, had no restrictions from medication side-effects, fatigue, pain, no lifting or carrying restrictions, no sitting or standing restrictions, no restrictions regarding the use of her hands, no restrictions on postural activities, no environmental limitations, and no restrictions requiring Plaintiff to lie down, recline, elevate their legs, use foot controls).

[13] R. 1125 (Dr. Akhtar's Medical Opinion).

[14] R. 1125–29 (Dr. Akhtar's Medical Opinion).

could pay attention before needing a break and checked the box for "4+" absences a month from work due to her treatment.[15] Without explanation, Dr. Akhtar checked the "never" box for how much Plaintiff can lift and how much Plaintiff can carry.[16] Dr. Akhtar checked the boxes that Plaintiff could sit/stand/walk 6 hours in an 8 hour workday and would require the option to sit, stand, lie down, or recline at will, likely every 10 to 30 minutes—when asked to identify the particular medical or clinical findings which support his assessment, he answered that a "substitute teacher sits majority of the day, cannot walk or stand for prolonged periods of time."[17] Dr. Akthar opined that Plaintiff needed a walker as an assistive device and could ambulate without the use of the walker "as needed"—when asked to provide the supportive medical or clinical findings for this opinion, he wrote "[Plaintiff] receives steroid injections, uses walkers to get around between injections."[18] Dr. Akhtar opined that Plaintiff can never reach, occasionally handle, finger, feel, and rarely push or pull with her hands because her "finger joints make it difficult to hold [and] lift objects."[19] Dr. Akhtar opined that Plaintiff must continuously use foot controls because she receives steroid injections to manage her arthritis pain.[20] Without any

---

[15] R. 1131 (Dr. Akhtar's Medical Opinion).
[16] R. 1132 (Dr. Akhtar's Medical Opinion).
[17] R. 1132 (Dr. Akhtar's Medical Opinion).
[18] R. 1132 (Dr. Akhtar's Medical Opinion).
[19] R. 1133 (Dr. Akhtar's Medical Opinion).
[20] R. 1133 (Dr. Akhtar's Medical Opinion).

explanation, Dr. Akhtar opined that Plaintiff may never crawl, rarely stoop and climb stairs, ramps, ladder, and scaffolds, occasionally kneel and crouch, frequently balance and rotate head and neck.[21] Without any explanation, Dr. Akhtar opined that Plaintiff should never be exposed to unprotected heights, moving mechanical parts, humidity and wetness, and dust/odors/fumes/pulmonary irritants, rarely be exposed to vibrations, and occasionally operate a vehicle, and be exposed to extreme cold or heat.[22]

### C. *The ALJ Properly Evaluated Both Opinions.*

After an extensive discussion of Plaintiff's symptoms, hearing testimony, and medical history, including mostly normal or "mild" MRI and X-ray results and conservative treatment plans, the ALJ found the opinions discussed above to be unpersuasive because:

> [t]hey provide minimal explanatory support, and little support is to be found in their treatment notes, considered along with the rest of the medical evidence in formulating the medical evidence discussion above. Moreover, these opinions are inconsistent with the evidentiary considerations raised below in the assessment of the findings of the reconsideration State medical consultant.

R. 23–24. The ALJ then provided a detailed explanation of the opinion of the reconsideration State medical consultant, Dr. Phillip Matar, wherein the ALJ noted he found Dr. Matar's opinion partially persuasive considering the medical record—

---

[21] R. 1134 (Dr. Akhtar's Medical Opinion).
[22] R. 1134 (Dr. Akhtar's Medical Opinion).

the ALJ diverged from Dr. Matar's opinion to impose greater restrictions on Plaintiff's RFC. R. 24.

Reading the entirety of the ALJ's decision, the ALJ properly evaluated each of the doctors' opinions. The ALJ first rejected their opinions because they failed to provide any meaningful support or explanation for their opinions. As noted above, both doctors marked and circled answers on the forms, but failed to provide any explanation for their opinions other than a few conclusory statements merely restating the selected limitation.[23]

Moreover, the ALJ relied on the supportability and consistency factors in finding the above opinions to not be persuasive. The ALJ noted "little support" for their opinions "in their treatment notes, considered along with the rest of the medical evidence." R. 24. The ALJ understood these opinions to be unsupported by and inconsistent with the record's medical evidence. Both doctors opined that Plaintiff needed an assistive device to ambulate as needed, but the ALJ noted that the medical

---

[23] "The use of such checklist forms is generally viewed with disfavor among the federal courts of appeals and district courts within the Fifth Circuit when the forms are not adequately supported by any narrative citations to clinical findings." *Ray v. Comm'r of Soc. Sec.*, No. 4:21-CV-1709, 2022 WL 3566844, at *4–5 (S.D. Tex. Aug. 17, 2022) (citing *Brown v. Astrue*, No. 11-2919, 2013 WL 620269, at *6 (E.D. La. Jan. 18, 2013); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (finding good cause to assign little weight to a treating doctor's questionnaire opinion "due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examination . . ."); *Dabbs v. Astrue*, No. 3:11-CV-03145-BF, 2012 WL 2343902, at *9 (N.D. Tex. June 20, 2012) (finding that the ALJ properly rejected a checkbox questionnaire after examining plaintiff for fifteen minutes); *Segovia v. Astrue*, No. H-11-0727, 2012 WL 948815, at *16–17 (S.D. Tex. Mar. 2, 2012) (finding that the ALJ properly rejected the opinion of a treating physician who marked answers next to pre-printed findings on a form), *report and recommendation adopted*, 2012 WL 951543 (S.D. Tex. Mar. 19, 2012)).

evidence demonstrated that "[t]he record contained no prescription or other statement of medical necessity for an assistive device or wheelchair," and based on this and the record's indication that Plaintiff had a "mostly normal gait, strength," no assistive device or wheelchair is medically necessary. R. 22.

Dr. Akhtar provided two other relevant opinions—a limitation on Plaintiff's ability to concentrate and a limitation on her fingering and handling. Regarding any mental limitations, the ALJ noted that Plaintiff "has sought no significant treatment for her mental impairments—nothing, that is, beyond perhaps some psychiatric medications prescribed by nonspecialists—despite having been able to pursue extensive treatment for her physical impairments," and "when her medical sources included psychiatric findings as part of their general exam of the claimant, such findings were generally normal." R. 20. The ALJ specifically noted that "there have been no findings of impaired concentration or of abnormalities of thought process or content." R. 20. Regarding Plaintiff's fingering or handling abilities, the ALJ noted that some manipulative limitations are warranted due to Plaintiff's rheumatoid arthritis and cervical issues, R. 24–25, and also noted that according to medical records, "tenderness has been mostly absent from the joints," "[s]ensation has been normal," "[m]otor strength has been generally normal," and "[r]ange of motion has been mostly normal." R. 23. Clearly, the ALJ understood these opinions to be

16

unsupported by and inconsistent with the medical evidence.[24]

Further, the check-the-box form utilized by both doctors required the doctors to provide the "particular medical or clinical findings which support [their] assessment of limitations and why the findings support the assessment," but neither doctor provided the requested support. Dr. Rodriguez-Quintana did not support or explain any of his opinions. Dr. Akhtar filled in these lines with terse reiterations of the limitations he would impose or Plaintiff's diagnosis or treatment, but never how these findings connected to his opinion. Neither doctor made any purposeful effort to complete the form as written. *See Rohden v. Kijakazi*, No. CV H-22-1951, 2023 WL 4188344, at *5–6 (S.D. Tex. June 2, 2023), *report and recommendation adopted*, No. 4:22-CV-01951, 2023 WL 4190547 (S.D. Tex. June 26, 2023).[25] The Court finds that the ALJ properly evaluated the opinions of Drs. Rodriguez-Quintana and Akhtar.

Even so, the Court is unconvinced that had the ALJ had provided a more

---

[24] Plaintiff provides a litany of what she labels as competing evidence, but nothing cited by Plaintiff indicates the necessity of the limitations suggested by Drs. Rodriguez-Quintana and Akhtar and rejected by the ALJ. Plaintiff does not show where Plaintiff's use of a wheelchair or assistive device was deemed medically necessarily, where Plaintiff's medical records demonstrate anything other than a normal ability to concentrate, or where Plaintiff's records indicate that she needed more restrictions to her ability to finger or handle. *See* ECF No. 14 at 17–18.

[25] This case is distinguishable from *Rai R. v. Kijakazi*, No. 4:21-CV-2270, 2022 WL 4450487, at *5 (S.D. Tex. Sept. 23, 2022). In *Rai*, the Court found that "[a]n ALJ errs when he or she finds an opinion unpersuasive because it is inconsistent with other medical evidence in the record, instead of considering whether the objective medical evidence that doctor provided supported his or her opinion." *See Rai*, 2022 WL 4450487, at *5. Here, both doctors failed to explain or otherwise support their opinion.

detailed discussion using all the "right words," it would have led to a different decision in this matter. *See Rohden*, 2023 WL 4188344, at *6. Upon the Court's independent review of the medical records from both doctors, there is nothing that indicates the necessity of the restrictions the doctors suggested. Dr. Rodriguez-Quintana's treatment records indicate Plaintiff used "no device during ambulation most of the time," and nowhere in his records does Dr. Rodriguez-Quintana prescribe or recommend an assistive device—instead, he recommended weight loss and physical activity.[26] In Dr. Akthar's records, he did not prescribe or recommend an assistive device and instead recommended medication and physical therapy.[27] Dr. Akthar's treatment notes fail to discuss any issues Plaintiff may have with fingering and handling.[28] Further, Dr. Athkar's notes do not have any information under "social history," "stress," or "social isolation and connection," much less information to support the numerous mental limitations he would impose on Plaintiff's RFC.[29]

Accordingly, Plaintiff has failed to demonstrate that the decision of the ALJ should be disturbed.

---

[26] R. 1100, 1103 (9/15/2021 Treatment Records).

[27] R. 1028–29 (10/28/2021 Treatment Records), 1036–37 (11/12/2021 Treatment Records); 1044–45 (11/16/2021 Treatment Records).

[28] R. 1027–28 (10/28/2021 Treatment Records); 1035 (11/12/2021 Treatment Records); 1043–44 (11/16/2021 Treatment Records).

[29] R. 1026 (10/28/2021 Treatment Records); 1035 (11/12/2021 Treatment Records); 1043 (11/16/2021 Treatment Records).

## VI.  CONCLUSION

Therefore, it is **ORDERED** that Plaintiff's motion for summary judgment, ECF No. 13, is **DENIED**. Defendant's motion for summary judgment, ECF No. 16, is **GRANTED**. The decision of the Commissioner is **AFFIRMED**. This case is **DISMISSED WITH PREJUDICE**.

Signed at Houston, Texas, on March 4, 2024.

*Dena Palermo*

**Dena Hanovice Palermo**
**United States Magistrate Judge**